IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EDDIE VICTOR LYLES, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | CV-98-J-2095-S |
| DR. ROBERT CAIN, | ) ) ) | |
| Defendant. | ) | |

**ENTERED**
MAR 1 2 2002

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Eddie Victor Lyles, alleges that his constitutional rights were violated while he was incarcerated at William E. Donaldson Correctional Facility in Bessemer, Alabama. Plaintiff is presently incarcerated at Elmore Correctional Facility in Elmore, Alabama. The *pro se* complaint names as defendants Dr. Cain, Dr. Bernstein, and Dr. Laybourn[1]. Plaintiff seeks transfer to Kilby Correctional Facility "where he can receive proper medical treatment from a skin specialist".

On February 8, 2001, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On July 30, 2001, defendant Cain filed his special report attaching his affidavit and plaintiff's medical records. By Order of February 8, 2002, the parties were notified that the special report filed by defendant Cain

---

[1] The court notes that the claims in this action against Dr. Bernstein and Dr. Laybourn were dismissed without prejudice by Order entered February 8, 2002 (see document number 26). The only remaining defendant is Dr. Cain.

would be construed as a motion for summary judgment. The plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff has not, however, responded to the motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

2

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On or about April 1, 1998, plaintiff noticed that his skin had begun to break out in what appeared to be a rash (plaintiff's complaint page three). On April 2, 1998, plaintiff signed up for sick call (defendant Cain's affidavit page one). Plaintiff was seen by a sick call screening nurse (plaintiff's complaint page three). The triage nurse noted that plaintiff had a rash on his hands, thighs and buttocks, that there was no edema or redness present, and that plaintiff's skin was dry without discharge from the rash (defendant Cain's affidavit page one and plaintiff's medical records Health Services Request Form dated April 2, 1998). Plaintiff complained of severe itching with the rash (defendant Cain's affidavit page one and plaintiff's medical records Health Services Request Form dated April 2, 1998). Correctional Medical Services physician Kathryn Laybourn reviewed the nursing documentation on April 3, 1998 and orders were written for Hydrocortisone Cream and Benadryl (plaintiff's complaint page three, Dr. Cain's affidavit page one and plaintiff's medical records

doctor's orders dated April 3, 1998). Plaintiff was instructed to sign up again for sick call if there was no improvement (defendant Cain's affidavit page one and plaintiff medical records doctor's orders dated April 3, 1998).

The Benadryl and Hydrocortisone Cream failed to alleviate his problem, prompting plaintiff to submit a second request for medical treatment (plaintiff's complaint page three). Plaintiff signed up for sick call on April 6, 1998, complaining that the skin rash was continuing and that the medication was not helping the problem (defendant Cain's affidavit page one and plaintiff's medical records Health Services Request Form dated April 6, 1998 and stamped April 7, 1998). Plaintiff was again screened by the nurse and was prescribed a different medication to be used for fourteen days. Plaintiff was also scheduled to see the doctor as a result of this sick call visit (defendant Cain's affidavit page one and plaintiff's medical records Health Services Request Form dated April 6, 1998 and stamped April 7, 1998). Plaintiff was examined by defendant Cain on April 9, 1998 and reported that the rash was not as irritating and was somewhat better with medication (defendant Cain's affidavit page one and plaintiff's medical records Interdisciplinary Progress Notes dated April 9, 1998). The medication was continued and a two week follow-up appointment was scheduled. Plaintiff was examined by defendant Cain during his follow-up appointment on April 23, 1998. During the examination, plaintiff reported that the rash was worse than it was on April 9, 1998. Defendant Cain diagnosed plaintiff as having severe contact dermatitis of an unknown etiology (defendant Cain's affidavit page one and plaintiff's medical records Interdisciplinary Progress Notes dated April 23, 1998). Defendant Cain placed plaintiff on a high dose steroid taper for the contact dermatitis and ordered a two week follow-up appointment to monitor the effects of this treatment

(defendant Cain's affidavit page one and plaintiff medical records Interdisciplinary Progress Notes dated April 23, 1998).

The new medication caused plaintiff's condition to worsen (plaintiff's complaint page four). The rash spread over plaintiff's entire body. Plaintiff submitted a third request for medical treatment in which he complained about the new medication (plaintiff's complaint pages four and attached sheet). The new medication contained steroids which, according to plaintiff, caused an allergic reaction (plaintiff's complaint attached sheet). Since plaintiff's condition had grown worse, he was sent to the infirmary where he was examined by defendant Cain (plaintiff's complaint attached sheet). Plaintiff asked to be examined by a skin specialist, but defendant Cain denied his request (plaintiff's complaint attached sheet).

On May 7, 1998, plaintiff was examined during a follow-up appointment and assessed by Dr. Laybourn. During this visit, plaintiff reported itching at night and Dr. Laybourn noted an improvement in the rash (defendant Cain's affidavit page one and plaintiff's medical records Interdisciplinary Progress Notes dated May 7, 1998). Dr. Laybourn ordered that the steroid taper be continued and added Triamcimalone Cream to be given "keep on person". Dr. Laybourn also ordered Atarax for the itching and Selsun Shampoo trial (defendant Cain's affidavit page one and plaintiff's medical records doctors' orders dated May 7, 1998). Plaintiff describes his condition as pus filed bumps, a rash, constant "real bad" pain, red skin, itching, bleeding caused by scratching, swollen legs, burning skin when he showers, painful large knots on his legs, and the skin on his legs has turned black (plaintiff's complaint attached sheet).

Plaintiff was seen and assessed by Correctional Medical Services physicians on June 8, 1998, June 22, 1998 and July 20, 1998. On July 20, 1998, plaintiff presented with symptoms suggestive

of Deep Vein Thrombosis. Defendant Cain continued to treat the symptoms of the rash with priority shifting to rule out Deep Vein Thrombosis. Doppler studies were ordered and performed at Cooper Green Hospital (defendant Cain's affidavit page two and plaintiff's medical records doctor's orders dated July 20, 1998). On July 30, 1998, Dr. Laybourn performed a punch biopsy of the rash on the right hand under sterile technique (defendant Cain's affidavit page two and plaintiff's medical records Interdisciplinary Progress Notes dated July 30, 1998). The results were reported to defendant Cain and Dr. Laybourn on August 4, 1998 and plaintiff was diagnosed with dyshidrotic dermatitis (defendant Cain's affidavit page two and plaintiff's medical records pathology report from LabCorp dated August 4, 1998).

     Dr. Laybourn saw plaintiff on August 7, 1998, for a follow-up on his skin condition. At this visit, Dr. Laybourn educated plaintiff about his skin condition informing plaintiff that he had a chronic condition that would wax and wane. Dr. Laybourn ordered medication to continue to treat the symptoms of the chronic skin condition (Atarax for itching and Motrin for leg pain). She also added two creams to plaintiff's treatment regimen due to the results of the punch biopsy revealing gram-positive bacteria and yeast that may have reflected secondary colonization to the site (defendant Cain's affidavit and plaintiff's medical records Interdisciplinary Progress Notes dated August 7, 1998). Plaintiff's case was discussed with P. Windsor, the Pharmacological medical doctor at NaphCare's pharmacy. Dr. Windsor recommended Liqaderm Lotion which was started on August 20, 1998 (defendant Cain's affidavit page two and plaintiff's Medication Administration Record dated August 20, 1998). Plaintiff reported positive results from the use of the Liqaderm Lotion (defendant Cain's affidavit page two).

## DISCUSSION

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Neither will a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. at 106-8.

In *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every illness or injury invokes the constitutional protection -- only those that are 'serious' have that effect." *Evans v. San Quentin State Prison*, 1991 WL 438695, at *1 (N.D. Cal. Apr. 1, 1991), *quoting Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In *Estelle,* the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. 97 at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as requiring medical treatment, 'or one that is so obvious that even a lay person would recognize the need for a doctor's attention'" *Evans*, 1991 WL 43695, at *1, *quoting Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N. H. 1977).

8

*See also Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973). It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference. *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981).

It is undisputed that plaintiff suffers from a serious medical condition. It is clear, however, that defendant Cain's response to plaintiff's medical needs did not amount to deliberate indifference. Plaintiff does not contend that he received no medical treatment in connection with his skin condition. In fact, plaintiff himself states in his complaint that he was examined by defendant Cain and that he was prescribed medication for his skin condition. It is undisputed that defendant Cain and Dr. Laybourn examined plaintiff on several occasions and that several different medications were prescribed to treat plaintiff's condition. It has been shown that defendant Cain pursued various avenues in his efforts to diagnosis plaintiff's condition and to provide plaintiff with proper medical attention including sending a biopsy of plaintiff's rash to a laboratory for a pathology report. In his sworn affidavit, defendant Cain states that plaintiff's case was discussed with a Pharmacological medical doctor in an effort to find proper medical treatment for plaintiff. He states that the Pharmacological doctor recommended Liqaderm Lotion which was started on August 20, 1998. Plaintiff does not dispute any of the facts set forth in defendant Cain's sworn affidavit.

In addition, plaintiff's medical records reveal that plaintiff was examined by defendant Cain, Dr. Laybourn and nurses at the prison on at least twelve occasions beginning on April 2, 1998, the date plaintiff initially signed up for sick call with complaints of a rash, through August 19, 1998, the date this action was filed. Plaintiff's medical records also reveal that defendant Cain sought information from LabCorp in an effort to diagnosis plaintiff's condition on at least two occasions.

The medical records reflect that the first specimen was taken on April 10, 1998 and was reported by LabCorp to be non-reactive on April 30, 1998. The medical records also contain a pathology report from LabCorp dated August 4, 1998. The pathology report details the results of a punch test done on July 30, 1998. Plaintiff's medical records also contain ten pages of Medication Administration Records dating from April, 1998 through September, 1998. The Medication Administration Records detail the various medications administered to plaintiff for his skin condition during this time period. Also included in plaintiff's medical records are copies of the numerous doctors' orders written by defendant Cain and Dr. Laybourn detailing their efforts to treat plaintiff's condition. Plaintiff does not dispute the evidence presented in the medical records. Clearly, plaintiff has not been denied medical treatment.

Plaintiff complains that defendant Cain denied his request to be examined by a skin specialist. It is clear that plaintiff was not denied medical treatment, he was simply denied the medical treatment he requested. However, as previously noted, a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone does not give rise to a cause of action under the Eighth Amendment. The undisputed facts establish that defendant Cain was not deliberately indifferent to plaintiff's medical needs and is, therefore, entitled to summary judgment.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendant Cain is entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendant Cain's motion for summary judgment is due to be GRANTED and this action against defendant Cain DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered

contemporaneously herewith.

DATED this *11* day of *March*, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE